UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SQUARE 1 BANK,<br>            Plaintiff,<br>    v.<br>HENRY LO,<br>            Defendant. | Case No. 12-cv-05595-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 83 |
| HENRY LO,<br>            Third-Party Plaintiff<br>    v.<br>AMIT SHAH, et al.,<br>            Third-Party Defendants. | |

Now pending before the Court is the motion of Third-Party Defendants Amit Shah, Artiman Ventures, L.P. ("Artiman"), AbsolutelyNew Holdings, Inc. ("Holdings"), and AbsolutelyNew, Inc.'s ("ANI") to dismiss Third-Party Plaintiff Henry Lo's Complaint. (Dkt. No. 83.) After carefully considering the parties' submissions, the Court GRANTS in part and DENIES in part the motion to dismiss.

**ALLEGATIONS OF THE THIRD-PARTY COMPLAINT**

Henry Lo began working for Inventors Promotion and Research ("IPR"), a marketing company, in 2006. Lo was recruited to IPR by its president and founder Steven Barbarich. Lo joined IPR with the intent to turn around the struggling company using a mixture of his financial and management expertise as well as his own investment funds. In late 2006, IPR and Holdings,

ANI's parent company, conducted a stock exchange whereby IPR became a subsidiary of Holdings. In April 2007, Defendants Artiman and Shah purchased a controlling stake in Holdings. (See Dkt. No. 75 ¶ 42.)

Lo was "specifically promised" by IPR and later by ANI, "first through Barbarich and later by other upper management executives such as Richard Donat, Third Party Defendant Shah and others," that any advances Lo made to IPR or ANI would be repaid whenever funds were available and that Lo could repay himself. (*Id.* at ¶ 18.). "Based on these promises, representations, assurances and arrangements, Lo continued to fund the struggling Companies, and risked the possibility of personal tax liability for failure of any Company to timely pay its taxes." (*Id.* at ¶ 20.) Over time, Lo advanced hundreds of thousands of dollars in loans and credit to IPR and ANI.

"[I]n or around October 27, 2008, Holdings granted Lo by written indemnity agreement full indemnity for any judgments, expenses, costs, liabilities and attorney's fees as a result of Lo's actions on behalf of Holdings or on behalf of any subsidiaries, which would include IPR and ANI." (*Id.* at ¶ 60.)

Sometime in 2009, Square 1 Bank ("Square 1") extended an initial $500,000 loan to Holdings. The underlying litigation arose from the failure to repay this loan.

Although Lo left ANI shortly after Holdings received the loan from Square 1, "ANI continued to name Lo company Secretary, and Lo also possessed continued authority to act for IPR and ANI regarding debts and liabilities for which he might be potentially responsible and also with regard to amounts owed to Lo by the Companies." (*Id.* at ¶ 24.)

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St.*

*Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Under Federal Rule of Civil Procedure 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In particular, the complaint must include specificity regarding the charged conduct, including the "who, what, when, where, and how." *Reed v. Wells Fargo Bank*, 2011 WL 4802542, at *3 (N.D. Cal. Oct. 11, 2011). "[T]he circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). When alleging that fraudulent statements were made, a plaintiff must

3

1  identify the false statements and indicate why they were false.  *In re GlenFed, Inc. Sec. Litig.*, 42

2  F.3d 1541, 1548 (9th Cir. 1994).

## DISCUSSION

Third-Party Defendants (hereinafter, "Defendants") move to dismiss Lo's six causes of action: 1) equitable indemnity (against Holdings and Artiman); 2) express written indemnity (against Holdings and Artiman); 3) declaratory relief (against Holdings and Artiman); 4) defamation (against ANI, Holdings, Artiman, and Shah); 5) tortious interference with contract (against Holdings, Artiman, and Shah); and 6) fraud (against ANI, Holdings, Artiman, and Shah).

### A. The Indemnity Claims

Lo's first three claims seek to impose liability on Holdings and Artiman for any expenses, attorney's fees, and judgments levied against Lo in the underlying action.  Lo also seeks a declaration from this Court that Holdings and Artiman "owe him indemnity for any future tax liabilities paid by Lo as a result of his service as an employee or officer of ANI, Holdings or IPR." (Dkt. No. 75 ¶ 82.)  Lo asserts that Artiman is liable for such monies under the theory that Artiman was the alter ego of Holdings.  Defendants disagree and contend that, even if the alter ego theory is sufficiently pled, Lo fails to state a claim for indemnity to the extent his claims are based on the existence of a contract.

#### 1. Artiman's alter ego liability

"The equitable alter ego doctrine governs whether two separate entities may be treated as the same entity."  *Sandoval v. Ali*, ––– F. Supp. 2d ––––, 2014 WL 1311776, at *4 (N.D. Cal. Mar. 28, 2014).  The doctrine applies where "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone."  *RRX Indus., Inc. v. Lab–Con, Inc.*, 772 F.2d 543, 545–46 (9th Cir. 1985).  "[O]nly a difference in wording is used in stating the . . . concept where the entity sought to be held liable is another corporation instead of an individual."  *Las Palmas Assocs. v. Las Palmas Center Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991).  "In assessing alter ego, courts consider the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable

4

ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Sandoval*, 2014 WL 1311776, at *4. "Common ownership alone is insufficient to disregard the corporate form." *Id.* Lastly, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). "Rather, a plaintiff must allege specifically both the elements of alter ego liability, as well as facts supporting each." *Id.*

As an initial matter, Defendants assert that the heightened pleading standard for fraud claims in Federal Rule of Civil Procedure 9(b) applies to alter ego allegations. "Whether Rule 9(b) applies to pleadings of alter ego liability has been the subject of debate in district courts nationwide." *Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1242 n.2 (D. Nev. 2013) (collecting cases). The Court need not resolve such debate here, however, because Lo fails to dispute that Rule 9(b) applies to his alter ego allegations.

Lo contends that he has pleaded Artiman's alter ego liability with particularity by alleging that

> Artiman was the owner and parent of ANI and IPR, owned 90% of Holdings, dominated and controlled Holdings as its own venture such that corporate separation was not achieved, made financial decisions for Holdings through its own internal committee, directly managed Holdings and ANI whereby these entities directly reported to and received direction from Artiman, was owned and operated by the same individuals as the other entities, shared employees and guaranteed debts of the other entities so as to concentrate the assets in one and the liabilities in another.

(Dkt. No. 86 at 6 (citing Dkt. No. 75 ¶¶ 4, 5, 42, 46, 50, 56, 58, 66, 67, 74, 77, 80, 83)).) Lo fails to explain why these allegations plausibly suggest that "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) [that] an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus., Inc.*, 772 F.2d at 545–46. Although Lo alleges that Artiman owned 90% of Holdings and that Artiman dominated Holdings' decision-making both at the board and management level, such allegations are insufficient to satisfy the first requirement absent any allegation regarding Artiman's "manipulative control" of Holdings. *See Institute of Veterinary Pathology, Inc. v. Cal.*

5

*Health Labs., Inc.*, 116 Cal. App. 3d 111, 120 (1981) ("Interlocking directorates, although of concern because of the potential for improper conduct of the parent over a subsidiary is not, in and of itself, sufficient without direct evidence of *specific manipulative conduct* to warrant the piercing of the corporate veil.") (emphasis added). This is especially true in this case where Lo concedes that he must allege his alter ego theory with specificity pursuant to Rule 9(b). And while Lo alleges that Artiman guaranteed Square 1's loan to Holdings (Dkt. No. 75 ¶ 58), the Court is not persuaded, in the absence of any supporting cited authority, that a guarantee of a single loan plausibly suggests that Artiman and Holdings are one and the same. Finally, allegations regarding Holdings' manipulation of IPR's and ANI's assets and liabilities are insufficient to support an alter ego liability theory between Holdings and Artiman. While such allegations may be sufficient in regards to Holdings' alter ego liability vis a vis IPR and ANI, it does not follow that the next layer of corporate control is also pierced.

Even if Lo adequately alleged a sufficient unity of interest and ownership, dismissal is nevertheless warranted because Lo fails to satisfy the second requirement regarding inequity. The Complaint is devoid of any non-conclusory allegation as to why an inequitable result would follow if Holdings' acts are treated as those of Holdings alone.

### 2. Whether Lo has stated a claim

Defendants contend that Lo's first three claims asserting indemnity rights fail "[t]o the extent the indemnity claims are based on contract" because Lo has not pleaded all the elements for breach of contract. (Dkt. No. 83 at 3.) The Court is not persuaded. "The elements of a cause of action for indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible." *Expressions at Rancho Niguel Ass'n v. Ahmanson Developments, Inc.*, 86 Cal. App. 4th 1135, 1139 (2001). "Distinct from an 'express contractual indemnity claim,' the obligation of equitable indemnity arises from 'equitable considerations, brought into play either by contractual language not specifically dealing with indemnification or by the equities of the particular case.'" *Am. Licorice Co. v. Total Sweeteners, Inc.*, 2014 WL 892409, at *5 (N.D. Cal. Mar. 4, 2014) (quoting *Bay Development, Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1029 (1990)). "Implied contractual

1   indemnity is applied to contract parties and is designed to apportion loss among contract parties
2   based on the concept that one who enters a contract agrees to perform the work carefully and to
3   discharge foreseeable damages resulting from that breach." *Sehulster Tunnels/Pre–Con v. Traylor*
4   *Bros., Inc./Obayashi Corp.*, 111 Cal. App. 4th 1328, 1350–51 (2003).

5         Lo's first claim for equitable indemnity does not depend on the breach of a contract; rather,
6   Lo's equitable indemnity claim is "[d]istinct from an express contractual indemnity claim." *Am.*
7   *Licorice Co.*, 2014 WL 892409, at *5 (internal quotation marks omitted).  Defendants' motion to
8   dismiss the first cause of action for equitable indemnity is accordingly denied.

9         Lo's claim for express written indemnity alleges that "Holdings and Artiman have
10  breached the written, express Indemnity Agreement alleged herein, to Third Party Plaintiff's
11  damages according to proof."  (Dkt. No. 75 ¶ 79.)  Lo asserts that his express indemnity claim is
12  sufficient as he alleges 1) the existence of an Indemnification Agreement between Holdings and
13  himself, as the indemnitee, and 2) that Holdings breached the agreement by failing to reimburse
14  Lo for the expenses he has incurred so far in this litigation and by failing to inform the relevant
15  insurers of Lo's need for reimbursement.  (Dkt. No. 75 ¶¶ 61, 68 & Ex. 1.)  The Indemnification
16  Agreement provides that "The Company shall indemnify [Lo] . . . if [Lo] acted in good faith and
17  in a manner [Lo] reasonably believed to be in or not opposed to the best interests of the
18  Company."  (*Id.* at Ex. 1 ¶ 1(a).)  Defendants contend that Lo has failed to identify the specific
19  provision Holdings breached as well as Lo's performance of the contract or excuse for
20  nonperformance.  However, when read in the light most favorable to Lo, his Complaint and the
21  attached Indemnification Agreement adequately alleges how the agreement was breached and Lo's
22  performance under the agreement.  These allegations provide fair notice to Holdings as to the
23  conduct underlying the claim such that Holdings may effectively defend itself.  Defendants'
24  motion to dismiss the second cause of action is accordingly denied.

25        Finally, Defendants fail to separately discuss Lo's claim for declaratory relief, and instead
26  group the claim together with Lo's first two claims.  Because Defendants' motion to dismiss those
27  claims against Holdings is denied, Defendants' motion to dismiss the declaratory relief claim is
28  also denied.

**B.      Defamation**

"To sustain a cause of action for defamation, a plaintiff must demonstrate the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Ringler Assocs. Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000). The statute of limitations for a defamation claim is one year. Cal. Code Civ. P. § 340(c). Defendants contend that the defamation claim fails because 1) it is barred by the statute of limitations, and 2) it is not properly pled.

The defamation cause of action accrues and the one-year statute of limitations begins "at the time the defamatory statement is 'published' (using term 'published' in its technical sense)." *Shively v. Bozanich*, 31 Cal.4th 1230, 1247 (2003). "[I]n defamation actions the general rule is that publication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed." *Id.* The defamation claim is based on statements made by Defendants to Square 1 regarding Lo's fraudulent conduct. (*See* Dkt. No. 75 ¶ 85.) Lo explains in his brief that he first learned of these statements when Defendants filed the underlying complaint in this action in late 2012. Thus, by Lo's own admission, he learned of the defamation more than one year before seeking leave to file his Complaint.[1] Lo's defamation claim is accordingly barred by the statute of limitations.

Even if the cause of action was timely, the claim is subject to dismissal because Lo fails to allege what defamatory "written and oral statements" each defendant made. (Dkt. No. 75 ¶ 85.) Lo cannot merely lump the Defendants together without specifically alleging the liability of each defendant.

Defendants' motion to dismiss the defamation claim is accordingly GRANTED. Further, because Lo admits that he learned of the unspecified allegations almost two years ago yet took no timely action, such dismissal is without leave to amend as Lo will be unable to allege facts that lift the statute of limitations bar. *See Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986) ("[L]eave to amend may be denied if it appears to be futile or legally insufficient.").

---

[1] The parties agree that January 28, 2014, the day Lo sought leave to file a third-party complaint, is the operative date for purposes of the statute of limitations analysis.

### C. Tortious Interference with Contract

Lo alleges that Holdings, Artiman, and Shah, tortiously interfered in "the agreements and contractual promises" made between Lo and ANI and between Lo and IPR. (Dkt. No. 75 ¶ 88.) Defendants move to dismiss the claim on the grounds that it is untimely and unsupported by sufficient allegations.

The elements of a claim for tortious interference with contractual relations are "1) a valid contract between plaintiff and a third party; 2) defendant's knowledge of this contract; 3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage." *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Further, "[i]t has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof." *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 997 (1977).

The statute of limitations for tortious interference with contract in California is two years. *See Kiang v. Strycula*, 231 Cal. App. 2d 809, 811–12 (1965); *see also* Cal. Civ. Proc. Code § 339(1). A tortious interference claim typically accrues "at the date of the wrongful act." *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974). "But in no event does a claim accrue 'later than the actual breach of the contract by the party who was wrongfully induced to breach,' because the breach is the culmination of the alleged wrong." *DC Comics v. Pacific Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (quoting *Trembath*, 43 Cal. App. 3d at 836).

#### 1. Statute of limitations

Lo fails to allege when ANI and IPR purportedly breached the contracts giving rise to the tortious interference claim. However, considering that Lo alleges that Defendants, "beginning in or around April, 2011," informed Square 1 of Lo's fraudulent conduct, it appears the breach occurred more than two years prior to the filing of Lo's motion for leave. In any event, Lo

9

contends that the discovery exception applies to his tortious interference claim.[2] In California, "[t]he discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (1983). "California courts have applied the discovery rule to claims for . . . interference with contract." *Curley v. Wells Fargo & Co.*, 2014 WL 2187037, at *6 (N.D. Cal. May 23, 2014). Lo's Complaint, however, does not include any allegations that would support application of the discovery rule. Lo's tortious interference claim is accordingly dismissed with leave to amend. In any amended complaint, Lo must allege facts that plausibly suggest that Lo was ignorant of the breach through no fault of his own; if he cannot do so, his claim is time barred.

### 2. Sufficiency of allegations

Defendants further contend that, even if the claim is timely, Lo fails to allege the causation element of the tortious interference claim; specifically, that the contracts between Lo and ANI and Lo and IPR would otherwise have been performed. Defendants' argument is not appropriate for a Rule 12(b)(6) motion. Taking all factual allegations as true, and when read in the light most favorable to Lo, the Complaint as a whole plausibly suggests that Lo's repayment agreements with ANI and IPR would have continued absent the alleged interference. Further, even if there are allegations that suggest the agreements would not have otherwise continued, such a contrary inference is not dispositive. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.").

Finally, Defendants assert that Lo cannot state a claim against Holdings and Artiman for tortious interference with Lo's contracts with ANI and IPR because Lo alleges elsewhere in his

---

[2] Lo also contends, without citation to any authority, that his claim did not accrue until Square 1 filed the underlying complaint in October 2012 because it was not until then that he was "assessed with damages." (Dkt. No. 86 at 10.) However, as stated above, a tortious interference claim accrues no later than the actual breach of the contract. *See DC Comics*, 938 F. Supp. 2d at 948.

1 Complaint that Holdings is an alter ego of ANI and IPR and Artiman, in turn, is an alter ego of

2 Holdings. Lo's alternative allegations, however, are permissible. *See* Fed. R. Civ. P. 8(d)(2) ("A

3 party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either

4 in a single count or defense or in separate ones. If a party makes alternative statements, the

5 pleading is sufficient if any one of them is sufficient."), (3) ("A party may state as many separate

6 claims or defenses as it has, regardless of consistency."); *see also MB Fin. Grp., Inc. v. U.S.

7 Postal Serv.*, 545 F.3d 814, 819 (9th Cir. 2008) ("The district court correctly noted that a plaintiff

8 is generally entitled to plead alternative or multiple theories of recovery on the basis of the same

9 conduct on the part of the defendant.").

### D. Fraud

11 Defendants move to dismiss Lo's fraud claim, which alleges that all Defendants defrauded

12 Lo by authorizing Lo's repayments "but concealing from [Lo] their intent to disclaim their

13 involvement in same, and claim Lo to be solely responsible for these payments without their

14 direction or authorization." (Dkt. No. 75 ¶ 92.) Defendants assert that the fraud claim fails

15 because it does not meet the heightened pleading requirements of Rule 9(b) and because it is

16 barred by the statute of limitations.

17 As noted above, fraud claims must be pled with particularity under Rule 9(b); that is, the

18 complaint must include specificity regarding the charged conduct, including the "who, what,

19 when, where, and how." *Reed*, 2011 WL 4802542, at *3. To state a claim for fraud, Lo must

20 allege (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to defraud (*i.e.*, to

21 induce reliance); (4) justifiable reliance; and (5) resulting damage. *Kearns v. Ford Motor Co.*, 567

22 F.3d 1120, 1126 (9th Cir. 2009). "The requirement of specificity in a fraud action against a

23 corporation requires the plaintiff to allege the names of the persons who made the allegedly

24 fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote,

25 and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153,

26 157 (1991).

27 Further, a fraud claim under California law is untimely if filed three years after the claim

28 accrues. Cal. Code. Civ. P. § 338(d). A fraud claim is "not deemed to have accrued until the

11

1  discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id.* Because the
2  discovery rule operates as an exception to the statute of limitations, "if an action is brought more
3  than three years after commission of the fraud, plaintiff has the burden of pleading and proving
4  that he did not make the discovery until within three years prior to the filing of his complaint."
5  *Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412, 437 (1945). "To excuse failure to discover the fraud
6  within three years after its commission, a plaintiff also must plead facts showing that he was not
7  negligent in failing to make the discovery sooner and that he had no actual or presumptive
8  knowledge of facts sufficient to put him on inquiry." *Cansino v. Bank of Am.*, 224 Cal. App. 4th
9  1462, 1472 (2014) (internal quotation marks omitted). To that end, a plaintiff must allege facts
10 showing "the time and surrounding circumstances of the discovery and what the discovery was."
11 *Id.* "The discovery related facts should be pleaded in detail to allow the court to determine
12 whether the fraud should have been discovered sooner." *Id.*

### 1. Statute of limitations

Lo argues that his fraud claim did not accrue until the filing of the underlying complaint in October 2012 because "he was not assessed with damages and had no reasonable means of discovering Defendants' fraud until this date." (Dkt. No. 86 at 12.) Lo's contention that his fraud claim does not accrue until he incurs damages is contrary to Section 338(d); what matters is when Lo should have reasonably discovered the fraud. Lo appears to concede that the fraud was committed more than three years prior to the filing of his Complaint, but that he could not have reasonably discovered the fraud until Square 1 filed its complaint in 2012. Lo's Complaint, however, fails to allege as much. Even if it did, Lo would need to allege additional facts that plausibly suggest "that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Cansino*, 224 Cal. App. 4th at 1472. Lo's Complaint contains no such allegations and is therefore subject to dismissal as untimely.

Lo further contends that if his claim is untimely, the Court should apply the doctrine of equitable tolling. The Court is not persuaded. "Equitable tolling is a judge-made doctrine which operates independently of the literal wording of the Code of Civil Procedure to suspend or extend

a statute of limitations as necessary to ensure fundamental practicality and fairness." *In re Marriage of Zimmerman*, 183 Cal. App. 4th 900, 911 (2010) (internal quotation marks omitted). Lo alleges no facts that would excuse his untimely claim in the name of "fundamental practicality and fairness." *Id.* Lo's reliance on the test set forth in *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 2008) is inapposite. The test in *Cervantes* is applicable where a plaintiff has previously filed a claim against the same defendants, which is not the case here. *See id.* ("A plaintiff's *pursuit of a remedy in another forum* equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim.") (emphasis added). Even if *Cervantes* did apply to Lo's answer to Square 1's complaint, as Lo contends, Lo has not sufficiently alleged that his April 2013 answer was "timely notice" to Defendants.

### 2. Failure to state a claim

The fraud claim is also dismissed because Lo fails to identify allegations in his Complaint that meet Rule 9(b)'s heightened pleading standard. While Lo identifies several people who allegedly made fraudulent statements regarding his authorization, Lo fails to specifically allege what each person said and when each person said it. For instance, Lo alleges that he

> was specifically promised by IPR and later by ANI, first through Barbarich and later by other upper management executives such as Richard Donat, Third Party Defendant Shah and others, that any advances Lo made to these Companies would be repaid whenever funds were available; and that Lo could pay himself without the need for further specific authorization.

(Dkt. No. 75 ¶ 18.) However, Lo does not allege when these statements were made, how they were made (*e.g.*, orally or in writing), and where they were said. Nor does Lo identify an allegation in the Complaint that specifically relates to the circumstances surrounding Holdings' and Artiman's fraudulent statements. Lo must allege more to satisfy Rule 9(b).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Defendants' motion to dismiss Lo's first through third causes of

13

1  action is GRANTED as to Artiman and DENIED as to Holdings; Defendants' motion to dismiss
2  Lo's fourth through sixth causes of action is GRANTED as to all Defendants.  The dismissal is
3  with leave to amend, except the defamation claim is dismissed without leave to amend since Lo
4  concedes that the claim is untimely.  Any amended complaint must be filed within 20 days of the
5  date of this Order.

**IT IS SO ORDERED.**

Dated: August 22, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge